UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TARA CASH,

                Plaintiff,

      v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

Case No. C18-520 JCC

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by discounting the opinions of every doctor and treating provider in the record, and requests the Court remand the case for further administrative proceedings. Dkt. 9. As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

I.     BACKGROUND

Plaintiff is currently 44 years old, has a high school education, and has worked as a cashier, general clerk, and park aide. Administrative Record (AR) 33. On December 29, 2015, plaintiff applied for benefits. AR 85. She alleges disability as of the application date. AR 24. Plaintiff's applications were denied initially and on reconsideration. AR 83, 84, 112, 113. After

the ALJ conducted a hearing on October 11, 2017, the ALJ issued a decision finding plaintiff not disabled. AR 41, 24-35.

II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the December 2015 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: borderline personality disorder, post-traumatic stress disorder (PTSD), depressive disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform work at all exertional levels. She is limited to simple, routine, repetitive tasks, with brief or occasional and superficial interaction with the public.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, she is not disabled.

AR 26-34. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-4.

III. DISCUSSION

This Court may set aside the Commissioner's denial of social security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

Plaintiff contends the ALJ erred by discounting, or failing to incorporate into the RFC, the opinions of every treating, examining, and nonexamining medical source. Dkt. 9.

A treating physician's opinion is entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

### A. Denise Sterchi, LICSW

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1502(a), (d), (e); 416.902(a), (i), (j). An ALJ may reject the opinion of a non-acceptable medical source, such as a therapist, by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

Denise Sterchi, LICSW, has been plaintiff's treating mental health provider since March 2015. AR 965. She wrote in a letter to the state Division of Vocational Rehabilitation (DVR) that plaintiff had "dissociative episodes" almost daily where she "loses attention and is easily distracted from even simple tasks such as cooking a meal. Needless to say, this will be problematical in most work settings. … She is extremely distrustful of other people [which] often manifests as anger and leaving the situation." AR 431. Ms. Sterchi also provided a medical source statement in July 2017. AR 965-70. Ms. Sterchi opined that plaintiff would have daily problems with staying on task for two-hour intervals and would be absent from work more than once a week due to "episodes of dissociation." AR 966-67. If required to work full time, plaintiff would be unable to work in coordination with or proximity to others at least 20% of the time, interact appropriately with the public, or respond appropriately to criticism from supervisors. AR 968. When under stress, plaintiff would have socially unacceptable "anger outbursts" at work. AR 968. Plaintiff would cease to be able to function effectively if required to get to work at a particular time, perform even simple repetitive tasks, or be supervised. AR 969. Ms. Sterchi also testified at the October 2017 hearing. Ms. Sterchi observes dissociation "from the look in their eyes, … there's this guardedness, [a] sort of blank milkiness sometimes…." AR 68. Because her treatment of plaintiff involves bringing up traumatic

memories, plaintiff "appears to be in a somewhat disassociated state much of the time." *Id*. Ms. Sterchi testified that, according to current research, dissociative episodes are triggered by "a trauma memory" and cause a flood of endogenous opioids, essentially "sedat[ing]" the person "to cope with the distress…." *Id*. In that state, a person "can't think straight, … can't, sometimes, do simple tasks, remember instructions for simple tasks." *Id*. "[J]ust asking her to … do something can, at times, trigger the disassociation…." AR 69.

Before Ms. Sterchi testified at the hearing, the ALJ asked plaintiff's counsel to "please be brief because … this is not an acceptable medical source. I know they have their heart in the right place, but I don't really find I give much weight to therapists." AR 66. Plaintiff asserts that "[t]his comment was improper." Dkt 9 at 13. Plaintiff implies that the ALJ discounted Ms. Sterchi's opinions in part because she is not an acceptable medical source, but that was not one of the reasons the ALJ provided in his decision. *See* AR 31. Plaintiff does not otherwise argue that the ALJ's comment establishes reversible error, and the Court will not address it further. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an issue not argued with any specificity in briefing).

The ALJ gave Ms. Sterchi's opinions "little weight" as inconsistent with plaintiff's activities because plaintiff did not dissociate when interacting with vocational service providers,[3] and plaintiff worked as a dog-walker for several weeks, not two or three days as Ms. Sterchi testified. AR 31. Conflict with a claimant's activities "may justify rejecting a treating provider's opinion." *Ghanim*, 763 F.3d at 1162.

---

[3] The ALJ added: "Rather than dissociating, the claimant expressed desire to commit to a 2-year training program to be a chi gong instructor." AR 31. This does not appear to be an additional reason, and the Commissioner does not address it in her brief. *See* Dkt. 12 at 4-5. The Court will not address it further.

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 5

### 1. Dissociation

The ALJ found that plaintiff's file from the state Division of Vocational Rehabilitation (DVR) "document[ed] a consistent stream of courteous and effective communication between the claimant and her case managers." AR 29-30. These courteous communications are emails, which are not face-to-face interactions where dissociation would even be detectable. *See*, *e.g.*, AR 355, 368, 375-76. It is worth noting that in plaintiff's intake meeting, her case manager described her as "guarded" and, in a later meeting, observed that plaintiff "appeared quite overwhelmed" during a discussion of community college programs. AR 390. These descriptions are consistent with Ms. Sterchi's testimony. The DVR records do not contradict Ms. Sterchi's opinions and are not a germane reason to discount them.

### 2. Dog Walking

At the hearing, Ms. Sterchi was aware of plaintiff's attempt to work part-time as a dog walker and testified "I think she only lasted two or three days." AR 69-70. Plaintiff testified that the job was for two or three hours, about three days a week. AR 49. Asked how long the job lasted, plaintiff testified "I think I stretched it out to like three or four weeks because I said I was out of town and gave some excuses for why I couldn't go. I was trying to get myself back together so I could keep working." AR 49. In other words, while plaintiff may have been considered an employee for three or four weeks, she did not go to work for much of that time. Plaintiff's dog-walking activities thus do not contradict Ms. Sterchi's opinions and are not a germane reason to discount them. In any case, whether plaintiff's work attempt failed after three days or three weeks, the failed work attempt does not undermine Ms. Sterchi's opinions that plaintiff could not maintain employment. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for [nine weeks] and,

because of his impairments, *failed,* that he did not then experience [symptoms] and limitations severe enough to preclude him from *maintaining* substantial gainful employment.").

The ALJ provided no germane reason and, accordingly, erred by discounting Ms. Sterchi's opinions.

**B.     David Widlan, Ph.D.**

After a February 2016 examination, Dr. Widlan opined that plaintiff would have marked, *i.e.*, very significant, limitations in her abilities to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 822. The ALJ gave Dr. Widlan's opinions "limited weight" as inconsistent with plaintiff's activities because plaintiff contacted community college programs, regularly attended therapy with Ms. Sterchi, and emailed "proper[ly] and courteous[ly]" with her DVR case managers. AR 31.

Contacting community colleges is not an activity inconsistent with Dr. Widlan's opinions. The ALJ seems to suggest that contacting programs means that plaintiff believed she could complete a program. However, even if Dr. Widlan's opinions were inconsistent with plaintiff's *beliefs* about what activities she could successfully engage in, his opinions were not inconsistent with plaintiff's actual *activities*.

The record shows that plaintiff attended therapy with Ms. Sterchi for about 60 minutes once a week. *See* AR 789-812. This is not inconsistent with Dr. Widlan's opinion that plaintiff was limited in her ability to attend work for eight hours a day, five days a week.

Plaintiff's ability to email with her case managers does not contradict Dr. Widlan's opinion that plaintiff would be limited in her ability to communicate face-to-face in a work setting.

The Commissioner argues that Dr. Widlan's opinions could be rejected because "Plaintiff's vocational rehabilitation case worker thought that she was so functional that she should 'enroll full-time once she begins schooling.'" Dkt. 12 at 2 (quoting AR 390). This (1) is an improper post-hoc argument, (2) misrepresents the record, and (3) is not a specific and legitimate reason to discount Dr. Widlan's opinions. First, the ALJ did not employ such reasoning. Second, the record shows that the vocational rehabilitation counselor "told [plaintiff] that I would ex[pect] her to enroll full-time once she begins schooling." AR 390. There is no indication that such an expectation is based on the counselor's evaluation of plaintiff's functioning. Third, even if it were, the counselor's evaluation, with no supporting evidence and no medical expertise, is not a specific and legitimate reason to discount the conflicting opinions of an acceptable medical source. The Commissioner's argument is not well taken.

The ALJ provided no specific and legitimate reason and, accordingly, erred in discounting Dr. Widlan's opinions.

### C.     Faulder Colby, Ph.D.

Dr. Colby reviewed Dr. Widlan's and Ms. Sterchi's reports and some of plaintiff's medical records. AR 830. Dr. Colby concurred with Dr. Widlan's opined limitations. *Compare* AR 831, 822. The ALJ gave Dr. Colby's opinions "some weight only" because they were based on reports that the ALJ discounted. AR 32. Because the ALJ erred in discounting Dr. Widlan's and Ms. Sterchi's opinions, the ALJ also erred in discounting Dr. Colby's opinions on the grounds that they were based on Dr. Widlan's and Ms. Sterchi's.

The Commissioner argues that the ALJ also rejected Dr. Colby's opinions in favor of the opinions of examining doctor M. Liddell, M.D. Dkt. 12 at 4. However, the ALJ did not identify how Dr. Liddell's opinions contradicted Dr. Colby's. In fact, both agreed that plaintiff's

impairments would cause limitations in her ability to complete a normal work day and work week.  AR 895, 831.  Some unspecified conflict with Dr. Liddell's opinions was not a specific and legitimate reason to discount Dr. Colby's opinions.

The Court concludes the ALJ erred by discounting Dr. Colby's opinions.

### D.     M. Liddell, M.D.

After an examination in December 2016, Dr. Liddell opined that plaintiff could "maintain regular attendance in the workplace" but that plaintiff's psychiatric symptoms "would continue to cause limitations in her ability to … complete a normal workday or workweek without interruptions, or manage usual stress encountered in the workplace[.]"  AR 895.  The ALJ largely accepted Dr. Liddell's opinions, giving them "appropriate weight," but noted that Dr. Liddell only "limited"—not "precluded"—completing workdays and workweeks and managing usual stress.  AR 32.  In this respect, Dr. Liddell's opinions are consistent with the other medical opinions in the record.  Dr. Widlan and Dr. Colby opined "marked"—meaning "very significant"—limitations on plaintiff's ability to complete a normal work day and work week.  AR 821-22, 831.  They did not check the boxes for "severe"—meaning an "inability"—to complete a normal work day and work week.  *Id.*  Dr. Liddell did not opine a specific level of limitation, which makes his opinions less helpful than the others'.  But the ALJ was not entitled to ignore the limitation simply because it was not a total preclusion.

The Commissioner argues that the ALJ accounted for Dr. Liddell's opinions by limiting plaintiff to simple, routine, repetitive tasks with minimal public interaction.  Dkt. 12 at 3.  But those limitations do not account for difficulty in completing a normal work day or work week.

The Court concludes the ALJ erred by failing to address Dr. Liddell's opined limitations in formulating plaintiff's RFC.

### E. Alan Breen, Ph.D.

Dr. Breen completed a "Comprehensive Neuropsychological Evaluation" in June 2016. AR 833. The ALJ determined that Dr. Breen "did not express an opinion on the claimant's functioning, but instead recommended continued mental-health treatment." AR 31 (citing AR 838-39). Dr. Breen wrote that plaintiff "needs a job that is somewhat lower in demand than her intellectual abilities would predict and not highly paced. … If she is able to handle about half-time work for a period of time, then looking towards training might be appropriate to enhance her skills." AR 838. Plaintiff interprets this as Dr. Breen's opinion that plaintiff was restricted from full-time or highly paced work. Dkt. 9 at 4. However, the context of Dr. Breen's report is developing a treatment plan, not opining as to plaintiff's long-term limitations. Before the excerpt that plaintiff cited, Dr. Breen stated: "I think that perhaps the best way of helping her is to first put her to work, see if she can tolerate routine work, and then look towards training. Investing in training before we know she is going to persist at work may not be fruitful." AR 838. In context, Dr. Breen's statements do not establish limitations on plaintiff's long-term or permanent abilities. *See* 20 C.F.R. §§ 404.1509, 416.909 ("your impairment … must have lasted or be expected to last for a continuous period of at least 12 months"). After his proposed treatment was completed, his opinions of plaintiff's abilities may have changed. The Court concludes the ALJ did not err by failing to address Dr. Breen's statements as opinions. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reasons for rejecting a doctor's statements that do not specify work-related functional limitations).

### F. State Agency Reviewing Doctors

In considering plaintiff's applications for benefits initially and on reconsideration, state

agency nonexamining doctors Renee Eisenhauer, Ph.D., and Michael Regets, Ph.D., opined that plaintiff "would do best in a stable, low pressure work setting with clear expectations of the work to be performed." AR 96, 125. The ALJ gave their opinions "significant weight." AR 32. Plaintiff argues the ALJ erred by failing to include a limitation in the RFC to work that is low pressure with clear expectations. Dkt. 9 at 17. Clear expectations are accounted for by the RFC limitation to "simple routine repetitive tasks…." AR 28. Once the simple, routine tasks have been explained, the expectation is clearly to simply repeat them.

The Court concludes the ALJ did not err in incorporating the state agency doctors' opinions into the RFC.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Ms. Sterchi, Dr. Widlan, Dr. Colby, and Dr. Liddell, reassessing the RFC as appropriate and proceeding to step five as necessary.

DATED this 19th day of December, 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE